(C. D. 1520)

Louis Goldey *v.* United States

United States Customs Court, First Division

(Decided April 23, 1953)

*Barnes, Richardson & Colburn (Joseph Schwartz* and *Edward N. Glad* of counsel) for the plaintiff.

*Charles J. Wagner,* Acting Assistant Attorney General (*Richard E. FitzGibbon,* special attorney), for the defendant.

Before Oliver and Mollison, Judges

Mollison, Judge: The merchandise the subject of this protest was described on the invoice as "glazed earthenware tiles," and was assessed with duty at the rate of 30 per centum ad valorem under the provisions of paragraph 202 (a) of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T. D. 51802. The tiles provided for by that provision are described therein as follows:

Tiles, unglazed, glazed, ornamented, hand painted, enameled, vitrified, semi-vitrified, decorated, encaustic, ceramic mosaic, flint, spar, embossed, gold decorated, grooved or corrugated, and all other earthen tiles and tiling by whatever name known (except pill tiles, but including tiles wholly or in part of cement) * * *.

The protest claim is for duty at the rate of 25 per centum ad valorem under the provision in paragraph 202 (b) of the same act, as modified by the Mexican Trade Agreement, T. D. 50597, for—

Mantels, friezes, and articles of every description or parts thereof, composed wholly or in chief value of earthen tiles or tiling, except pill tiles * * *.

the precise claim relied upon being that the articles in question are either friezes or parts of friezes.

Samples representative of the imported merchandise are before us as plaintiff's collective exhibit 1 and plaintiff's exhibit 2. Collective exhibit 1 consists of three pieces of what are conceded to be earthen tiles or tiling, and not pill tiles, each 6 inches long by ½ inch wide by approximately 5/16ths of an inch thick. Each has an embossed, or raised, decorative motif on it and is in two or three colors. The decorative motif in each case is a simple one, such as curves, squares, etc., and is repeated three or four times on each tile. Exhibit 2 consists of a piece of similar tile or tiling 1 inch long by ½ inch wide by approximately 5/16ths of an inch thick, curved, so that it can be used in turning an outside corner.

There is no question as to the use of the imported pieces. They are used in tiled bathrooms and kitchens, being generally set in a single row about 5 inches, or one tile, below the top of the tile installation to form a horizontal band around the room. They are also, it appears, frequently used as part of the wainscot treatment and, in such use, may be set in a single row lower down on the wall, which row, while generally running horizontally may, by reason of a particular wall treatment, at times run vertically. Minor or infrequent uses are in mantels, where the band formed with their use sometimes runs vertically as well as horiziontally, and in tiled table tops.

It seems to be fairly clear that the word "frieze" is not used in the trade and commerce of the United States dealing in such merchandise in the buying or selling of pieces of tile such as those here in issue, but they are denominated "strips" in the trade. In fact, the only circumstance in which the word "frieze" might be used in connection with the instant merchandise was described by the importer, appearing as a witness in his own behalf, as follows:

X Q. Did you ever call them friezes?—A. Yes.

X Q. You did?—A. In describing them sometimes to a woman who might be making a selection of color for a bathroom, we might refer to it as a frieze or decorative border. (Tr. pp. 15–16.)

Note the use of the conditional term "might," which seems to imply that the foregoing use of the term is not general, but rather exceptional.

His own understanding of the term "frieze," the witness said, "is a narrow band richly ornamented or decorated and sculptured or engraved, or embossed."

There is no question as to the application of the rule of commercial designation in this case, as neither party raises that issue. Plaintiff contends that the common meaning of the term "frieze" has application to the merchandise at bar, either as referring to it directly or on the ground that it constitutes a part of such "frieze," and has cited numerous dictionary definitions in support of that contention.

In each of the cited definitions, the meaning of the word "frieze" as used in architecture is first given. Such definition as given in Webster's New International Dictionary (1930 *et seq.*) is typical and is as follows:

That part of an entablature which is between the architrave and the cornice.

The foregoing definition obviously applies to the use of the word in classical architecture. There is no connotation here that the pieces of tile in issue have any use in classical architecture or that they are used in such fashion. Each definition cited by the plaintiff, however, contains additional language of broader scope which appears to be that upon which plaintiff relies. In Webster's New International Dictionary such language is:

Any sculptured or richly ornamented band in a building, or, by extension, in furniture, etc.

In Funk & Wagnalls New Standard Dictionary (1941) it is:

Any ornamented horizontal band or strip in a wall.

The last-quoted definition seems to be extremely broad and, considered alone, might possibly cover the merchandise at bar. However, when it is read together with the Webster definition, above, it will be seen that the latter imposes other elements upon the meaning of "frieze," i. e., that the band must be "sculptured or richly ornamented." The ornamentation of the merchandise at bar hardly rises to the state of being either sculptured or rich. In the Century Dictionary and Cyclopedia (1906) the definition of the term "frieze" is as follows:

In *arch.*, that part of an entablature which is between the architrave and the cornice; also, any longitudinal decorative feature or band of extended length, occupying a position, in architecture or decoration, more or less similar to that of the frieze in an entablature.

and in the New Century Dictionary (1946):

That part of an entablature which is between the architrave and the cornice, and which is commonly ornamented with sculpture; hence, any similar longitudinal or horizontal decorative band or feature, as on a wall.

These latter definitions impose the element of similarity to the frieze in architectural use.

It will thus be seen that lexicographic definitions of the term "frieze" are somewhat at variance with one another. The court finds

them unsuitable as aids to its understanding in the determination of the common meaning of the term.

As has been noted, neither party raises the question of commercial designation in this case. It is presumed, therefore, that the common and commercial meanings of the term "frieze" are the same. There is ample testimony in the record, including that offered on behalf of both the plaintiff and the defendant, that the term "frieze" is not generally used or applied in commercial transactions involving merchandise such as that in issue, but that such merchandise is known as "strips." The sole exception to this practice, the testimony as to which by the importer has been hereinabove quoted, seems of its nature to be considered to be an exception to the practice which otherwise generally obtains.

It may be said, therefore, that the evidence shows that the commercial meaning of the term, which, as stated, is presumed to be the same as the common meaning thereof, does not include merchandise such as that at bar. Because of its uniformity, the court accepts such evidence as an aid to its understanding of the term, and holds that merchandise such as that here in issue is not embraced, either as a unit or as a part, within the common and commercial meaning of the term "frieze."

Judgment will therefore issue overruling the protest claim accordingly.